UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**ROY MICELI and COURTNEY MICELI,**

       **Plaintiffs,**

v.                                           Case No:  6:14-cv-1602-Orl-41DAB

**ORANGE LAKE COUNTRY CLUB, INC.,**

       **Defendant.**
_____/

## ORDER

THIS CAUSE is before the Court on Defendant's Motion to Dismiss the Verified Amended Complaint and Motion to Strike the Demand for Declaratory Judgment and/or Declaratory Relief (Doc. 20), and Plaintiffs' Response thereto (Doc. 27). For the reasons set forth below, Defendant's Motion will be denied.

**I.  BACKGROUND**

Plaintiffs incurred a debt (the "Debt")—timeshare maintenance fees—with Defendant, which Defendant attempted to collect. (Am. Compl., Doc. 16, ¶¶ 5–6). On or about March 28, 2014, Plaintiffs retained the Finn Law Group, P.A. ("Finn") for legal representation regarding their timeshare interests, including the Debt. (*Id.* ¶ 17). Shortly thereafter, Finn sent Defendant a certified letter ("Letter of Representation," Ex. A1 to Am. Compl., Doc. 16-1) describing Finn's representation of Plaintiffs, providing Finn's contact information, and requesting that Defendant cease all future communication with Plaintiffs and instead direct communication to Finn's office. (Am. Compl. ¶ 18). The Letter of Representation included both Plaintiffs' names and stated that Finn's representation was with regard to Plaintiffs' contract with Defendant. (*Id.* ¶ 19). Plaintiffs

have only had one contract in connection with Defendant—the contract under which the Debt was owed. (*Id.* ¶ 20). The Letter of Representation explicitly revoked any prior consent to call Ms. Miceli's cellular telephone and enclosed a Limited Power of Attorney for Mr. Miceli. (*Id.* ¶¶ 21–22).

After Finn sent the Letter of Representation, Defendant sent Mr. Miceli at least thirteen e-mails over a period of four months in an attempt to collect the Debt. (*Id.* ¶ 128). During that same period, Defendant called Mr. Miceli's cellular telephone at least eight times and Ms. Miceli's cellular telephone at least five times using an automatic telephone dialing system ("ATDS"), a predictive telephone dialing system ("PTDS"), or an artificial or pre-recorded voice ("APV") in an attempt to collect the Debt. (*Id.* ¶¶ 106, 129–30). After each call to Plaintiffs' cellular telephones, Defendant left a voicemail message, using an APV or ATDS. (*Id.* ¶¶ 30, 46, 50, 56, 60, 66, 70, 74, 78, 82, 86, 92, 96). In each voicemail message, regardless of whose phone was called, Defendant specifically mentioned both Plaintiffs' names and requested that either Mr. or Ms. Miceli return the call. (*Id.*). Defendant also sent a billing statement addressed to both Plaintiffs in an attempt to collect the Debt. (*Id.* ¶¶ 62–63).

Based on these events, Plaintiffs filed this case, alleging that Defendant violated the Florida Consumer Collection Practices Act ("FCCPA"), Chapter 559, Florida Statutes, and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and seeking damages for the alleged violations. Plaintiffs are also seeking declaratory judgment and injunctive relief. Defendant seeks dismissal of all of Plaintiffs' claims and requests that Plaintiffs' demand for declaratory relief be stricken.

## II.     LEGAL STANDARD

To survive a motion to dismiss, a plaintiff must plead "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." A court may dismiss a complaint under Rule 12(b)(6) when the plaintiff fails to nudge "[its] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In determining a complaint's plausibility, a court must accept all of the plaintiff's factual allegations as true and construe them in a light most favorable to the non-moving party. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir. 2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678.

While the scope of the review in deciding a motion to dismiss generally "must be limited to the four corners of the complaint," *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002), "[a] copy of a written instrument that is an exhibit to a pleading is [also] a part of the pleading for all purposes," Fed. R. Civ. P. 10(c). "At the motion-to-dismiss stage, [courts] consider the facts derived from a complaint's exhibits as part of the plaintiff's basic factual averments. [Courts] even treat specific facts demonstrated by exhibits as overriding more generalized or conclusory statements in the complaint itself." *Fed. Trade Comm'n v. AbbVie Prods. LLC*, 713 F.3d 54, 63 (11th Cir. 2013) (citations omitted).

### III.  DISCUSSION

At issue in Defendant's Motion is whether Plaintiffs have stated a claim for violations of the FCCPA, Florida Statutes, subsections 559.72(7) and 559.72(18) (Counts I and II, respectively), a violation of the TCPA, 47 U.S.C. § 227 (Count III), and a willful violation of the TCPA, 47 U.S.C. § 227 (Count IV). Also at issue is whether Plaintiffs have standing to obtain declaratory relief. Plaintiffs have adequately alleged violations in all four counts and have standing to bring a claim for declaratory relief.

### A.       Florida Consumer Collection Practices Act

####       1.       *Legal representation with regard to the Debt*

In relevant part, subsection 559.72(18), Florida Statutes, prohibits a debt collector from "[c]ommunicat[ing] with a debtor if the person knows that the debtor is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address." Plaintiffs allege that Defendant had actual knowledge of their legal representation with respect to the Debt because of the Letter of Representation. Defendant attempts a hypertechnical reading of the Letter of Representation but ignores the context of the letter. Defendant primarily argues that the word "debt" does not appear in the Letter of Representation, rendering the letter insufficient to notify Defendant that Plaintiffs were represented as to the Debt. However, the word "debt" does appear in the letter. (Letter of Representation at 1 ("This letter will serve as notice to advise your client to cease all above communication with our above-referenced clients' [sic] regarding the alleged *debt* referenced above." (emphasis added))).

Even if the word "debt" had not appeared in the letter, there is no requirement that a debtor use any precise language or magic word to notify a debt collector that the debtor is represented by legal counsel with respect to a debt. *See Bishop v. I.C. Sys., Inc.*, 713 F. Supp. 2d 1361, 1368 (M.D. Fla. 2010) (noting, under a different provision of the FCCPA, that no magic word is required in a

letter—common sense and context can convey the same message). In addition to the cease-and-desist communication language in the Letter of Representation, the dispute of the underlying debt, Plaintiffs' refusal to make further payments, and the numerous references to "debt," "currency," and "indebtedness" in the Limited Power of Attorney enclosed with the letter provided context to Defendant about the nature of Finn's legal representation. The FCCPA is a broad statute—its goal is "to provide the consumer with the most protection possible." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1192 (11th Cir. 2010). Rigidly requiring the use of precise language to provide notification that a debtor was represented would contradict the FCCPA's remedial nature and its broad purpose of protecting the public. Defendant also cites a number of cases related to notice of legal representation in circumstances involving *multiple* debts. Those cases are distinguishable from the instant case because Plaintiffs have only one contract with Defendant, under which they incurred the Debt. (Am. Compl. ¶ 20). Therefore, taking all inferences in the light most favorable to Plaintiffs, Plaintiffs have sufficiently alleged they notified Defendant that they had legal representation with respect to the Debt.

### 2. *Indirect communication*

Both subsections of the FCCPA under which Plaintiffs allege violations require communication from a debt collector to a debtor. Fla. Stat. § 559.72(7), (18). The FCCPA and its federal counterpart—the Fair Debt Collection Practices Act ("FDCPA")—define communication as "the conveying of information regarding a debt directly or indirectly to any person through any medium." Fla. Stat. § 559.55(2); 15 U.S.C. § 1692a. While neither the FCCPA nor the FDCPA specifically define "indirect communication," the scope of such communications is "extremely

broad."[1] *Dauval v. MRS BPO, LLC*, No. 8:11-cv-2703-T-MAP, 2013 WL 9921550, at *8 (M.D. Fla. June 27, 2013) (quotation omitted). Indeed, the definition of "communication"—which encompasses the "indirect" language—includes the conveyance of information through *any* medium. Fla. Stat. § 559.55(2) (emphasis added). Defendant asserts that Plaintiffs have failed to state a claim under the FCCPA because they have not adequately alleged indirect communications by Defendant. Defendant's argument ignores the fact that, whether or not Plaintiffs sufficiently alleged indirect communications, Plaintiffs have adequately alleged *direct* communications. (*See* Am. Compl. ¶ 138).

Moreover, at least some of Plaintiffs' allegations clearly state a claim for indirect communications. Defendant's argument that only communications by third parties on behalf of creditors can constitute indirect communications contradicts the plain language of the statute and is without merit. *See Ramirez v. Apex Fin. Mgmt. LLC*, 567 F. Supp. 2d 1035, 1041 (N.D. Ill. 2008) (holding that a strict interpretation of indirect communication would be at odds with "Congress's intent in enacting the FDCPA, which calls for a broad construction of its terms in favor of the consumer"); *see also Rhodes v. Olson Assoc., P.C.*, No. 14-cv-00919-CMA-MJW, 2015 WL 1136176, at *6, *7 (D. Colo. Mar. 13, 2015) (noting a "'common sense' reading of what it means to 'indirectly' communicate with a debtor about a debt is in line with the view of the majority of cases on this point").

Plaintiffs allege that the voicemail messages left on each of their cellular telephones requesting that either Mr. or Ms. Miceli return the call to discuss Plaintiffs' joint debt constitute

---

[1] Where the FCCPA and the FDCPA use identical definitions, cases interpreting the FDCPA are applicable. *Beeders v. Gulf Coast Collection Bureau, Inc.*, No. 8:09-cv-00458-EAK-AEP, 2010 WL 2696404, at *2 (M.D. Fla. July 6, 2010).

indirect communications. Such allegations are sufficient to allege indirect communications. [2] *See Welch v. Green Tree Servicing LLC* (In re Runyan), No. 8:11-bk-13090-MGW, 2015 WL 2257331, at *4 (Bankr. M.D. Fla. May 8, 2015) (holding that communicating with a debtor-husband about a joint debt can be an indirect communication to the debtor-wife); *see also Belin v. Litton Loan Servicing, LP*, No. 8:06-cv-760-T-24EAJ, 2006 WL 1992410, at *4 (M.D. Fla. July 14, 2006) (ruling indirect communications can include voicemail messages "because they convey[] information about a debt indirectly, since the purpose of the message is to get the debtor to return the call to discuss the debt"); *accord Thompson v. Diversified Adjustment Serv., Inc.*, No. H-12-922, 2013 WL 3973976, at *4 (S.D. Tex. July 31, 2013) (noting "[t]he FDCPA includes such 'indirect' communications as voicemail messages" and citing other cases).

### 3. Harassing or abusive conduct

The FCCPA, among other things, prohibits a debt collector from "[w]illfully communicat[ing] with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family, or willfully engag[ing] in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family." Fla. Stat. § 559.72(7). As an initial matter, "whether conduct harasses, oppresses, or abuses will be a question for the jury." *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1179 (11th Cir. 1985). However, Defendant argues Plaintiffs have failed to plead any allegations that a reasonable jury could find abusive or harassing.

First, Defendant argues that only conduct enumerated in the FDCPA, 15 U.S.C. § 1692d, can be the basis for Plaintiffs' claim, and Plaintiffs have not specifically alleged any of those bases.

---

[2] Because the allegations addressed above are sufficient to allege communications, the Court need not address at this stage the e-mails sent to Mr. Miceli that only mention his name.

This argument is without merit. Although interpretations of the FDCPA are helpful where the statutes closely mirror one another, "the laws are not identical, and this Court must be conscious of the differences between the two." *Beeders v. Gulf Coast Collection Bureau, Inc.*, No. 8:09-cv-00458-EAK-AEP, 2010 WL 2696404, at *2 (M.D. Fla. July 6, 2010). Plaintiffs' claim is under the FCCPA, which intentionally left out any such list. Moreover, this list is not even exclusive under the FDCPA. *See Jeter*, 760 F.2d at 1178 ("[Section] 1692d is explicitly not limited to the conduct proscribed by subsections (1)–(6)."). Defendant's reliance on *Meininger v. GC Serv. Ltd. P'ship* (In re Hathcock), 437 B.R. 696, 703 (Bankr. M.D. Fla. 2010) is also misplaced. The *In re Hathcock* court considered both the conduct enumerated by the FDCPA and, more broadly, whether the collection letter at issue could be "considered 'conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.'" *Id.* Thus, contrary to Defendant's argument, the court did not require allegations of the FDCPA-enumerated conduct in order to state a claim under subsection 559.72(7).

Second, Plaintiffs' allegations are sufficient and supported by more than conclusory allegations. Defendant asserts that frequency is the only factor to consider in determining whether conduct is reasonably likely to harass or abuse. While frequency is a part of this determination, the Court must look at the totality of the circumstances. *See Story v. J.M. Fields, Inc.*, 343 So. 2d 675, 677 (Fla. 1st DCA 1977) (noting that the court should consider the context and purpose of calls, not just the frequency). Plaintiffs have alleged twenty-seven specific contacts, plus many more of which they believe Defendant has evidence, in conjunction with Defendant willfully contacting Plaintiffs after they had retained legal representation. (Am. Compl. ¶¶ 110, 112, 128, 129–30). Taking all inferences in favor of Plaintiffs, the Amended Complaint sufficiently states a claim under subsection 559.72(7). *See Mangiaracina v. Orange Lake Country Club, Inc.*, No. 8:14-cv-

1166-T-36MAP, 2015 WL 685778, at *6 (M.D. Fla. Feb. 18, 2015) (holding that the frequency of calls *coupled with* the debt collector's knowledge of the debtor's legal representation regarding a debt is also sufficient to state a claim under subsection 559.72(7)).

### B.  Telephone Consumer Protection Act

The TCPA specifies "[r]estrictions on use of automated telephone equipment," 47 U.S.C. § 227(b), and "provides a damages remedy for cellular-phone subscribers who receive autodialed phone calls without having given prior express consent to receive such calls," *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1246 (11th Cir. 2014)). For purposes of this Motion, the parties do not dispute that Mr. Miceli gave Defendant consent to call his cellular telephone. (Pls.' Resp. at 17). Instead, the parties dispute whether Mr. Miceli has sufficiently alleged revocation of that consent. The Eleventh Circuit "expressly held that 'prior express consent' under the TCPA may be revoked." *Coniglio v. Bank of Am., N.A.*, No. 8:14-cv-01628-EAK-MAP, 2014 WL 5366248, at *3 (M.D. Fla. 2014) (citing *Osorio*, 746 F.3d at 1255–56). Taking all inferences in favor of Plaintiffs, the Amended Complaint sufficiently alleges that the Letter of Representation revoked consent. *See id.* at *4 (holding that when a debtor notifies a debt collector of legal representation with respect to the subject debt, there is sufficient revocation of prior express consent). Plaintiffs have also sufficiently stated a claim for a willful or knowing violation of the TCPA. *Id.* (ruling that there was a willful and/or knowing violation where the defendant continued to call the plaintiffs after being instructed that it did not have consent to call the plaintiffs' cellular telephones).

### C.  Declaratory Relief/Declaratory Judgment

In the Amended Complaint, Plaintiffs seek declaratory relief as a remedy under both the FCCPA and the TCPA. Defendant argues that Plaintiffs cannot plead declaratory relief as a remedy

but must instead plead it as a separate cause of action. The FCCPA expressly provides that declaratory relief may be pleaded as a remedy. Fla. Stat. § 559.77(2); *Mangiaracina*, 2015 WL 685778, at *6. As to the TCPA, declaratory relief is available under 28 U.S.C. § 2201. Defendant has provided no authority supporting its argument that declaratory relief under the TCPA requires a separate cause of action. In fact, the plain language of the statute and the authority suggest otherwise. *See* 28 U.S.C. § 2201 (entitled Creation of a *remedy*) (emphasis added); *see also Mangiaracina*, 2015 WL 685778, at *7 (noting "[d]eclaratory relief can be a *remedy*, rather than a cause of action" under the TCPA) (emphasis in original); *Dennis v. Reg'l Adjustment Bureau, Inc.*, No. 09-cv-61494, 2010 WL 3359369, at *4 (S.D. Fla. July 7, 2010) (holding that, while it was permissible for the plaintiff to state a separate count for declaratory relief relating to alleged violations of the FCCPA and the TCPA, "it would have been better for [p]laintiff to have sought equitable relief under those corresponding sections of her [c]omplaint").

Defendant argues that, even if Plaintiffs can plead declaratory relief as a remedy, they do not have standing to do so. Specifically, to have standing to obtain declaratory relief under 28 U.S.C. § 2201, "a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Walden v. Ctrs. for Disease Control and Prevention*, 669 F.3d 1277, 1284 (11th Cir. 2012). Contrary to Defendant's argument, Plaintiffs have sufficiently alleged likelihood of injury in the future. Plaintiffs allege that "[d]espite having advised Defendant of Finn's representation of Plaintiffs with regard to the Debt, Defendant *continues* to attempt to collect the Debt directly from Plaintiffs in violation of the FCCPA and the TCPA." (Am. Compl. ¶ 107) (emphasis added). This paragraph alleges that Defendant is continuing to collect the Debt, which is sufficient at this stage to allege a likelihood of future injury. *See Suarez v. Ryans*, No. 8:12-cv-2401-T-30MAP, 2013 WL 1881304, at *2 (M.D. Fla. May 3, 2013) (citing *Malowney v.*

*Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1347 (11th Cir. 1999)) (noting that allegations of continuing violations constitute sufficient pleading of a substantial likelihood of future injury). Therefore, the request for declaratory relief will not be stricken at this time.

### IV. CONCLUSION

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1. Defendant's Motion to Dismiss the Verified Amended Complaint and Motion to Strike the Demand for Declaratory Judgment and/or Declaratory Relief (Doc. 20) is **DENIED**.

2. Defendant's Motion Requesting Leave to File a Reply (Doc. 28) is **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida on August 5, 2015.



CARLOS E. MENDOZA
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record